## CLIFFORD v. OAK VALLEY MILLS CO.

(District Court, D. Massachusetts. January 21, 1916.)

### No. 626.

1. BANKRUPTCY ⬥326—CLAIMS—RIGHT TO SET OFF MUTUAL CLAIMS.

The bankrupt was engaged in manufacturing woolen cloth, and had been receiving wool from defendant and making it into cloth for a price per yard which included all usual manufacturing costs and a profit, to be paid on delivery. It sometimes developed that the goods were not salable as first quality, because the manufacturing was imperfect, and a reduction in the price was charged back against the bankrupt. In November, 1913, taking these countercharges into account, defendant had overpaid the bankrupt over $7,000, and a demand note for the amount overpaid was taken. Beginning January 1, 1914, a new arrangement was made, whereby only 80 per cent. of the manufacturing charge was paid when the goods were delivered; 20 per cent. being reserved against the countercharges for imperfect work. In May, 1914, the bankrupt informed defendant that it was not able to continue operating its plant, and defendant ran the mill on a rental basis to work out its own stock in process, after which the mill was shut down, and in July an adjudication in bankruptcy was made. *Held* that, under Bankr. Act July 1, 1898, c. 541, § 68a, 30 Stat. 565 (Comp. St. 1913, § 9652), defendant was entitled to apply on its note sums due to the bankrupt out of the reserved amounts and sums due for work done by the bankrupt on the stock in process turned over to defendant, since the determination of the amount due the bankrupt when made would relate back to the adjudication, even though the bankrupt's claim was regarded as not due until the settlement of the accounts had been completed, and each party therefore had a provable claim against the other.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. ⬥326.]

2. BANKRUPTCY ⬥326—CLAIMS—RIGHT TO SET OFF MUTUAL CLAIMS.

The rent which defendant agreed to pay for the use of the mill to run out the stock in process, not being a debt created for the purpose of set-off, stood upon the same footing as the other sums due the bankrupt, and defendant was entitled to set it off and apply it on the note.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. ⬥326.]

In Equity. Suit by Philip G. Clifford, trustee in bankruptcy of the Somerset Woolen Company, against the Oak Valley Mills Company. Bill dismissed.

Robert Hale, of Portland, Me., for plaintiff.
Albert Fuller, of Taunton, Mass., for defendant.

MORTON, District Judge. This is a suit in equity by the plaintiff, as trustee in bankruptcy of the Somerset Woolen Company, to recover certain sums alleged to be due to the bankrupt from the defendant, which the latter claims the right to retain and apply on indebtedness due to it from the bankrupt.

[1, 2] The Somerset Woolen Company was adjudicated bankrupt in voluntary proceedings on July 3, 1914. It had, for about 10 years prior to its failure, been engaged in the business of manufacturing woolen cloths. From 1904 to 1909 it had operated on its own raw

stock. Beginning in 1909, Mr. Lancey, who with his brother were its principal stockholders, entered the employment of Mr. Lovering, owner of the Oak Valley Mills. The Somerset Company from that time on largely ceased to manufacture its own raw material. Instead of doing so, it received wool belonging to the Oak Valley Company, which it made into cloth for that company. For doing this work it was paid by the yard; the price fixed including all usual manufacturing costs and a profit.

Up to January 1, 1914, the Somerset Company was paid by the Oak Valley Company the full manufacturing charge for each lot of cloth when the cloth was delivered. It not infrequently developed later, when the goods came to be sold, that the manufacturing had been imperfectly done, and that the goods were not, therefore, salable as first quality. In such cases a large reduction had to be made in the price of the goods, and this was charged back by the Oak Valley Company against the Somerset Company. In November, 1913, the Oak Valley Company discovered that, taking these countercharges into account, it had overpaid the Somerset Company $7,506.71, and a demand note for that amount, dated November 1, 1913, was given by the Somerset Company to the defendant.

Beginning January 1, 1914, the two companies made a new arrangement covering future payments, which was, in substance, that the Oak Valley Company, instead of paying the Somerset Company the entire manufacturing charge when the goods were shipped out, should only pay 80 per cent. thereof, reserving 20 per cent. of each bill against such countercharges for imperfect work on the goods covered thereby, as might arise when the goods were marketed. This arrangement continued until some time in May, 1914, when the bankrupt informed the Oak Valley Company that it was no longer able to continue the operation of its plant, and arranged with the latter company to take over and run the mill on a rental basis, in order to work out its own stock in process. When that had been done, the mill was shut down, and the dealings between the two companies ended. The wages of the operatives due from the bankrupt when it ceased to operate its mill remain unpaid. The wool in process of manufacture at the time when the bankrupt suspended operations was turned over as it lay to the Oak Valley Company. On some of it a good deal of work had been done.

No payments or settlements have been made on account of the reserved 20 per cent. since the new arrangement went into effect. The Oak Valley Company cannot yet determine how much thereof will be required to meet its countercharges. If there shall be a surplus, the Oak Valley Company claims the right to apply it in reduction of its claim against the bankrupt on the note. The trustee contends that so much of the 20 per cent. as is not required for the countercharges must be paid over to him, and that the proposed application of it by the Oak Valley Company would be a voidable preference. In view of the small amount of property in the estate, the parties have, by agreement, refrained from the expense of stating the account, pending a decision by the court as to their rights.

At the time of the bankruptcy (July 3, 1914) the situation between the Somerset Woolen Company and the Oak Valley Mills Company was, in brief, that the former was indebted to the latter in the sum of $7,506.71 and interest upon the note, which, of course, was provable; and the Woolen Company had a claim against the Oak Valley Company for such balances of the 20 per cent. as should not be required to meet countercharges for poor work. This latter claim was, of course, founded upon a contract; the amount of it was not then known and is not as yet established. The determination thereof, when made, will relate back to the adjudication; and this is so, even though the claim of the Woolen Company be regarded as not due until the settlement of the accounts shall have been completed. Ex parte Prescott, 1 Atk. 230; Aldrich v. Campbell, 4 Gray (Mass.) 284; Bemis v. Smith, 10 Metc. (Mass.) 194; Demmon v. Bank, 5 Cush. (Mass.) 194; Bigelow v. Folger, 2 Metc. (Mass.) 255; Clarke v. Hawkins, 5 R. I. 219, 224; Marks v. Barker, 1 Wash. C. C. 178, Fed. Cas. No. 9096. It follows that, at the time in question, both the bankrupt and the defendant had claims against each other of such nature as to be provable in bankruptcy. The defendant's debt is not within the prohibition of section 68b (2); no contention to that effect is made by the trustee.

The right of set-off given by section 68a is very broad; the fact that the defendant's claim is for a liquidated amount upon a note, while the trustee's claim is for an unliquidated amount upon an open account, does not defeat it. Studley, Trustee, v. Boylston National Bank, 229 U. S. 523, 33 Sup. Ct. 806, 57 L. Ed. 1313. See, too, Cumberland Glass Mfg. Co. v. De Witt, 237 U. S. 447, 35 Sup. Ct. 636, 59 L. Ed. 1042, and especially the notes to Rose v. Hart, 2 Smith's Leading Cases (8th Am. Ed.) 308 et seq, in which the law as to set-off in bankruptcy is fully discussed. Upon the facts above stated, the defendant has the right to set off and apply upon its note against the bankrupt, whatever sums may become due from it to the bankrupt out of the reserved amounts and for work done on the stock in process, which was turned over. As to the rent amounting to $85, which the defendant agreed to pay to the bankrupt for the use of the mill to run out the stock in process, this credit arose in connection with the effort of the parties to extricate themselves from a somewhat difficult situation. It was not created for the purpose of set-off. I do not see that it stands upon any different footing from the other sums claimed by the trustee. The trustee does not contend that the total amount due to him equals the amount of the defendant's note.

I give such of the requests for findings and rulings as are contained in, or are consistent with, the foregoing opinion; the others I refuse. It follows that the bill must be dismissed; but as the plaintiff is acting only in a representative capacity, and was justified by the defendant's conduct in submitting the matter to the court, the dismissal will be without costs.